*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *MARITIME ENERGY, INCORPORATED,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 04-271-P-S* |
| | ) | |
| *CONTINENTAL INSURANCE COMPANY* | ) | |
| | ) | |
| *Defendant* | ) | |

*RECOMMENDED DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT*

The plaintiff, Maritime Energy, Incorporated, seeks summary judgment on its claims for damages and a declaratory judgment under four insurance policies issued to it by the defendant. The defendant seeks summary judgment as to two of those policies. I recommend that the plaintiff's motion be granted and the defendant's motion be denied.

**I. Summary Judgment Standard**

**A.  Federal Rule of Civil Procedure 56**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id*. (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co*., 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R.

56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (citations and internal punctuation omitted).

3

## II.  Factual Background

The following undisputed facts are appropriately supported in the parties' respective statements of material facts.[1]

The plaintiff is a Maine corporation with a principal place of business in Rockland, Maine. Statement of Undisputed Material Facts ("Plaintiff's SMF") (Docket No. 17) ¶ 1.  The defendant is a foreign insurance company authorized to issue insurance policies in the State of Maine.  *Id*. ¶ 2.  The defendant issued the four following policies of insurance to the plaintiff:

1.  A primary commercial general liability policy with a policy term of January 1, 1986 to January 1, 1987, number L-275-966 1 (the "1986 CGL policy");

2.  A primary commercial general liability policy with a policy term of January 1, 1987 to January 1, 1988, number L-107-962 0 (the "1987 CGL policy");

3.  An umbrella policy with a policy term of January 1, 1986 to January 1, 1987, number LX-2641976 (the "1986 Umbrella" policy); and

4.  An umbrella policy with a policy term of January 1, 1987 to January 1, 1988, number L-107-9620 (the "1987 Umbrella") policy).

---

[1] In response to the plaintiff's statement of material facts, the defendant submitted a document entitled "Statement of Material Facts That Are Disputed" ("Defendant's Responsive SMF") (Docket No. 27).  This document fails utterly to comply with this court's Local Rule 56, which requires, *inter alia*, that any party opposing a motion for summary judgment submit an opposing statement in which it admits, denies or qualifies each paragraph in the moving party's statement of material facts and that each denial or qualification be supported by a citation to the summary judgment record.  Local Rule 56(c) & (f).  The defendant's document responds only to six of the 42 paragraphs in the plaintiff's initial statement of material facts and, in two of those responses, fails to cite anything in support.  As a result, all of the paragraphs in the plaintiff's statement of material facts will be deemed admitted to the extent properly supported by record references.  Local Rule 56(f). The attorney who signed this document on behalf of the defendant is a member of the bar of this court.  All lawyers admitted to practice in this court are expected to be familiar with its local rules.  The fact that this attorney did not bother to so much as read Local Rule 56 is borne out by the purported statement of material facts which he submitted in support of his client's own motion for partial summary judgment.  That statement of material facts is included in the defendant's memorandum of law in support of the motion instead of being submitted as a separate document, as required by Local Rule 56(b); seven of its eleven numbered paragraphs include no citation to any authority, *id.;* two of its paragraphs cite as support only a reported decision of the Maine Law Court to which the defendant was not a party; and two paragraphs cite only to an affidavit without citing a specific page or paragraph, as required by Local Rule 56(f).  The plaintiff has objected appropriately to some of the paragraphs lacking the required authority.  Plaintiff Maritime Energy Incorporated's Response to Defendant Continental Insurance Company's Statement of Undisputed Material Facts ("Plaintiff's Responsive SMF") (Docket No. 30) ¶¶ 2-4.  Those paragraphs, as well as any to which the (*continued on next page*)

*Id*. ¶¶ 3-6.  The CGL policies each limited coverage for property damage claims to $ 1 million for

each occurrence.  Statement of Material Facts That are Undisputed ("Defendant's SMF"), included in

Memorandum of Law in Support of Continental Insurance Company's Motion for Partial Summary

Judgment ("Defendant's Motion") (Docket No. 20), ¶ 8; Plaintiff's Responsive SMF ¶ 8.  The 1986

CGL policy included the following exclusion:

> This insurance does not apply:
>
> * * *
>
> (f) to **bodily injury** or **property damage** arising out of the discharge,
> dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis,
> toxic chemicals, liquids or gases, waste materials or other irritants,
> contaminants, or pollutants into or upon the land, the atmosphere or any water
> course or body of water; but this exclusion does not apply if such discharge,
> dispersal, release or escape is sudden or accidental.

Plaintiff's SMF ¶ 7.  The 1987 CGL policy includes endorsement IL0928, which provides as follows:

> **POLLUTION EXCLUSION**
>
> It is agreed that the exclusion related to the discharge, dispersal, release or
> escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids
> or gases, waste materials, or other irritants, contaminants or pollutants is
> replaced by the following:
>
> > (1)  to **bodily injury** or **property damage** arising out of the actual, alleged
> > or threatened discharge, dispersal, release or escape of pollutants:
> > > (a)  at or from the premises owned, rented or occupied by the
> > > **named insured**;
> > > (b) at or from any site or location used by or for the **named
> > > insured** or **others** for the handling, storage, disposal, processing
> > > or treatment of waste;
> > > (c)  which are at any time transported, handed [sic], stored,
> > > treated, disposed of or processed as waste by or for the **named
> > > insured** or any person or organization for whom the **named
> > > insured** may be legally responsible; or
> > > (d) at or from any site or location which the **named insured** or any
> > > contractors or subcontractors working for directly or indirectly on
> > > behalf of the **named insured** performing operations;

---

plaintiff did not respond "admitted," accordingly will not be considered by the court.

> (i) if pollutants are brought on or to the site or location in connection with such operations; or
>
> (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
>
> (2) to any loss, cost or expense arising out of any governmental direction or request that **named insured** test[] for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
>
> Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Id*. ¶ 9.

The 1986 Umbrella policy contains no exclusion relating to pollution or environmental claims.

*Id*. ¶ 8.  The 1987 Umbrella policy includes endorsement UMB207, which provides:

> This policy shall not apply to Personal Injury or Property Damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals or other petroleum substances or derivatives[] (including any oil refuse or oil mixed with waste)[,] liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water.

*Id*.¶ 10.

Two individuals doing business as the B & L Country Store in Belmont, Maine applied on or about October 27, 1986 to the Maine Department of Environmental Protection ("DEP") to register and install underground storage tanks at the store.  *Id*. ¶¶ 18-19.  The DEP authorized installation of the underground storage tank facility on or after November 5, 1986[2] by letter dated October 30, 1986. *Id*. ¶ 22. The applicants needed no further license or permit from the DEP to complete the installation and begin the use of the tanks.  *Id*. ¶ 23.  The tanks were installed in late October or early November, 1986 by the plaintiff.  *Id*. ¶¶ 24-25.  The plaintiff first delivered gasoline to the tanks at the B & L Country Store in November 1986.  *Id*. ¶ 26.  At this time it was the plaintiff's custom and practice to fill newly

---

[2] The date in the plaintiff's statement of material facts is erroneously given as November 5, 1996.  Plaintiff's SMF ¶ 22.

installed underground storage tanks with gasoline immediately to allow the owner or operator to begin sales of gasoline as soon as possible after the installation was complete; the plaintiff did so at the B & L Country Store.  *Id*. ¶¶ 27-28.

The B & L Country Store began selling gasoline on or about December 10, 1986.  *Id*. ¶ 29.  It received its second delivery of gasoline on January 2, 1987.  *Id*. ¶ 30.  It first reported a leak in one of its underground storage tanks to the DEP on March 17, 1987.  *Id*. ¶ 31.  The plaintiff reported the leak to the defendant in 1987.  *Id*. ¶ 32.  The DEP directed the plaintiff to clean up the soil contamination. Defendant's SMF ¶ 5; Plaintiff's Responsive SMF ¶ 5.  The defendant retained the Rimkus Consulting Group, Inc. on February 21, 1991 to provide an assessment report in connection with the ongoing remediation of the release from the underground tanks at the B & L Country Store.  Plaintiff's SMF ¶ 33.  The defendant asked Rimkus to determine the cause of the release, evaluate the costs incurred to date and advise whether the recommendations and cost estimates for proposed work were appropriate. *Id*. ¶ 34.  Rimkus issued a written report to the defendant dated March 18, 1991, in which it reached the conclusion that the leaking underground storage tank at the B & L Country Store failed because it was improperly manufactured, not because it was improperly installed.  *Id*. ¶¶ 35-36.  Rimkus also concluded that "[t]he fuel release probably began as soon as fuel was introduced into the tank."  *Id*. ¶ 37.  The DEP determined that there have been no new discharges of gasoline discovered at the B & L Country Store after March 17, 1987.  *Id*. ¶ 42.

Initially, the defendant acknowledged and accepted coverage under the 1986 CGL policy and reimbursed costs incurred for the clean up of the damage caused by the leakage of gasoline into the ground from one of the tanks installed by the plaintiff.  *Id*. ¶ 12.  In 1998, the defendant retained a consultant, CURA Emergency Services, to conduct an investigation, based upon which the defendant determined that it should have originally accepted and acknowledged coverage under the 1987 CGL

policy rather than the 1986 CGL policy.  *Id*. ¶ 13.  The defendant then applied all of the payments it

had previously made to the 1987 CGL policy.  *Id*. ¶ 14.  According to the defendant, there is

approximately $132,000 left in primary coverage under the 1987 CGL policy.  *Id*. ¶ 16.  No payments

have been made under the 1987 Umbrella policy.  *Id*. ¶ 17.

### III. Discussion

The defendant seeks a judgment declaring that it is not liable under either of its 1987 policies.

Motion for Partial Summary Judgment of Defendant Continental Insurance Company (Docket No. 24)

at 1.  The plaintiff contends that all of the policies apply to the damage at the B & L Country Store, that

the defendant has waived any defense under the pollution exclusion clauses of the 1987 policies and

that the defendant is estopped to rely on the pollution exclusion clauses of the 1987 policies.  Plaintiff

Maritime Energy Incorporated's Motion for Summary Judgment, etc. ("Plaintiff's Motion") (Docket

No. 16) at 4-12.

Under Maine law, which is applicable here, the defendant is not estopped to deny coverage by

its actions, whether the initial payment under the 1986 CGL policy or its assignment of that payment to

the 1987 CGL policy.  According to Maine law,

> [t]o assert equitable estoppel in an insurance contract, an insured must prove
> two elements: (1) unreasonable conduct by the insurer which misleads the
> insured concerning the scope of coverage; and (2) justifiable reliance by the
> insured upon the conduct of the insurer.

*County Forest Prods., Inc. v. Green Mountain Agency, Inc.*, 758 A.2d 59, 66 (Me. 2000).  *See also*

*Tarason v. Town of S. Berwick*, 868 A.2d 230, 234 (Me. 2005).  The defendant's conduct must have

induced the insured to do what resulted to its detriment and what it would not have otherwise done.

*Guilford Indus. Inc. v. Liberty Mut. Ins. Co.*, 688 F. Supp. 792, 796 (D. Me. 1988).  Here, the

plaintiff apparently identifies as "unreasonable conduct" the defendant's denial of coverage after its

unilateral assignment of the plaintiff's claim to the 1987 CGL policy, s*ee* Plaintiff's Motion at 11-12

8

& Plaintiff Maritime Energy Incorporated's Memorandum of Law in Opposition to Defendant's

Motion for Partial Summary Judgment, etc. ("Plaintiff's Opposition") (Docket No. 31) at 7-8, but fails

to show what was unreasonable about the conduct itself.  The plaintiff goes on to contend that it "has

justifiably relied upon the actions of Continental in administering this claim under the 1987 policies

[sic] to conclude that the 1987 policies afford coverage for additional cleanup costs associated with

the gas storage tank installation."  Plaintiff's Motion at 11 & Plaintiff's Opposition at 7.  However,

under Maine law and on the summary judgment record before the court, the plaintiff's "expectation of

insurance benefits certainly cannot rise to the level of detrimental reliance."  *Connelly v. Home Life

Ins. Co.*, 432 A.2d 1235, 1236 (Me. 1981).  As was the case in *Connelly*, there is no evidence in the

summary judgment record as to whether the plaintiff "neglected to obtain other insurance, whether any

such failure was induced by reliance on any conduct of [the defendant], or indeed, whether [the

plaintiff] would have been able to obtain any additional insurance."  *Id.*  The plaintiff asserts that the

defendant "should have advised [it] promptly" that the policies at issue did not provide coverage "so

that it could seek alternative protection for its assets."  Plaintiff's Opposition at 7.  It does not suggest

what kind or source of protection would have been available to the plaintiff after the gasoline release

was discovered and after the defendant had promptly declined coverage.  In its original motion, the

plaintiff inserts the word "insurance" before the phrase "protection for its assets," Plaintiff's Motion

at 11, but it provides no evidence that any insurance coverage would be available after the damage

had been discovered, which is the relevant time for this analysis.  The plaintiff is not entitled to

summary judgment on its estoppel theory.

The outcome is different with respect to the plaintiff's waiver theory.  Waiver under Maine

law "is a voluntary relinquishment of some known right, benefit or advantage that the party would have

9

enjoyed were it not for the waiver." *Northeast Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 461 A.2d 1056, 1059 (Me. 1983).  Stated otherwise,

> [a] waiver is a voluntary or intentional relinquishment of a known right and may be inferred from the acts of the waiving party.  Thus, if one in knowing possession of a right does something *inconsistent* with the right or of his intention to rely upon it, he is deemed to have waived that right and is estopped from asserting that right if renunciation of the waiver would prejudice the party who has relied upon it.

*Kirkham v. Hansen*, 583 A.2d 1026, 1027 (Me. 1990) (emphasis in original; citation omitted).

The defendant's initial payment under the 1986 CGL policy can only be deemed a waiver under this definition.  Payment is inconsistent with the existence of a term in the policy making coverage unavailable for such a claim.  There is no evidence that the payment was made under a reservation of rights.[3] *See generally Saewitz v. Lexington Ins. Co.*, 133 Fed.Appx. 695, 698-99 (11th Cir. 2005); *Pitts v. American Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991); *Progressive Mich. Ins. Co. v. United Wis. Life Ins. Co.*, 84 F.Supp.2d 848, 854 (E.D. Mich. 2000).  *See also Houlehan v. Inhabitants of Kennebec County*, 81 A. 449, 450 (Me. 1911) (payment made with knowledge of facts not recoverable unless induced by fraud or duress). The defendant is liable under the 1986 policies by reason of this waiver.

The same result obtains in the case of the 1987 policies.  The defendant insurer must be deemed to have known of the pollution exclusion clauses in its 1987 policies.  Assignment of payment for some portion of the costs of the cleanup at the B & L Country Store to the 1987 CGL policy is

---

[3] The defendant's purported response to the statement of material facts submitted by the plaintiff in support of its motion for summary judgment includes a reference to "Exhibit B to the Ware Affidavit" in which "Warner Jones of Continental" states in a letter dated March 3, 1988, that "Continental's decision to enter into a compromise settlement agreement with Maritime Energy Company, Inc. is not to be construed as an admission of coverage or a waiver of any of the rights of either party to the insurance contract or contracts involved." Defendant's Responsive SMF ¶ 12.  An affidavit of John Ware, Sr. was submitted by the plaintiff with its initial statement of material facts.  Attachment 1 to Plaintiff's SMF.  Due to the defendant's lack of compliance with this court's Local Rule 56 as already noted, the defendant has not placed any attachment to this letter properly before the court as part of the summary judgment record. The letter therefore can have no effect on my analysis of the defendant's liability under the 1986 policies.  I note further that the "settlement agreement" to which the letter refers in the paragraph on which the defendant relies in its response to paragraph 12 of the
(*continued on next page*)

clearly inconsistent with these clauses and any intention of the defendant to rely on them.  From all that appears in the summary judgment record, the defendant has waived its right to rely on the pollution exclusion clauses in either of its 1987 policies.  Because the summary judgment record does not include undisputed evidence showing whether the costs incurred in the cleanup have exceeded or will exceed the coverage available under either the 1986 or the 1987 CGL and umbrella policies, the plaintiff's motion should be granted as to all four.

The plaintiff is entitled to summary judgment.  The defendant's motion for partial summary judgment should be denied.[4]

### IV.  Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion for summary judgment be **GRANTED** and that the defendant's motion for partial summary judgment be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 26th day of September, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

plaintiff's statement of material facts, *id*. at 2, does not appear in the summary judgment record.

[4] The defendant's memorandum of law opposing the plaintiff's motion for summary judgment is replete with factual assertions not included in either party's statements of material facts.  Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (filed with Opposition of Defendant, Continental Insurance Company, to Plaintiff's Motion for Summary Judgment (Docket No. 26)) at 2-3, 4-6.  Any such assertions will be disregarded.