UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARITIME ENERGY INCORPORATED,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CONTINENTAL INSURANCE COMPANY,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)　Docket No. 04-CV-271-P-S<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

SINGAL, Chief District Judge

Before the Court is Plaintiff's Motion for Summary Judgment (Docket # 16). As briefly explained below, the Court DENIES the Motion, finding that there exists a genuine issue of material fact.

**I. STANDARD OF REVIEW**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

1

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni, 369 F.3d at 598.

Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## II.  BACKGROUND FACTS

In 1986 and 1987 Defendant Continental Insurance Company issued Plaintiff Maritime Energy, Inc. a total of four insurance policies:

1. A primary commercial general liability policy with a policy term of January 1, 1986 to January 1, 1987, number L-275-966 1 (the "1986 CGL policy");

2. A primary commercial general liability policy with a policy term of January 1, 1987 to January 1, 1988, number L-107-962 0 (the "1987 CGL policy");

3. An umbrella policy with a policy term of January 1, 1986 to January 1, 1987, number LX-2641976 (the "1986 Umbrella" policy); and

4. An umbrella policy with a policy term of January 1, 1987 to January 1, 1988, number

L-107-9620 (the "1987 Umbrella" policy).

(Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts (Docket # 47) at ¶ 3-6). The CGL policies each limited coverage for property damage claims to $1 million for each occurrence. The 1986 CGL policy excluded coverage for claims relating

> to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden or accidental.

(Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts (Docket # 47) at ¶ 7). There is dispute as to whether the 1986 Umbrella policy contained an exclusion relating to pollution or environmental claims. (Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts (Docket # 47) at ¶ 8). The 1987 CGL policy includes endorsement IL0928, which provides as follows:

### POLLUTION EXCLUSION

> It is agreed that the exclusion related to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants is replaced by the following:
>
> > (1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
> > > (a) at or from the premises owned, rented or occupied by the named insured;
> > > (b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;
> > > (c) which are at any time transported, handed [sic], stored, treated, disposed of or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or
> > > (d) at or from any site or location which the named insured or any contractors or subcontractors working for directly or indirectly on behalf of the named insured performing operations;
> > > > (i) if pollutants are brought on or to the site or location in connection with such operations; or

3

>    (ii) if the operations are to test for, monitor, clean up,
>    remove, contain, treat, detoxify or neutralize pollutants.
>    (2) to any loss, cost or expense arising out of any governmental
>    direction or request that named insured test[] for, monitor, clean up,
>    remove, contain, treat, detoxify or neutralize pollutants.
>
> Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant,
> including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.
> Waste includes materials to be recycled, reconditioned or reclaimed.

(Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts (Docket # 47) at ¶ 9). The 1987 Umbrella policy includes endorsement UMB207, which provides:

> This policy shall not apply to Personal Injury or Property Damage arising out
> of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes,
> acids, alkalis, toxic chemicals or other petroleum substances or derivatives[]
> (including any oil refuse or oil mixed with waste)[,] liquids or gases, waste
> materials or other irritants, contaminants or pollutants into or upon the land,
> the atmosphere or any water course or body of water.

(Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts (Docket # 47) at ¶ 10). Plaintiff installed two underground gasoline storage tanks at the B & L Country Store in Belmont, Maine in late October or early November, 1986, and delivered gasoline to the B & L Country Store in November of 1986. Plaintiff may also have delivered a second load of gasoline on January 2, 1987. A gasoline leak was discovered on March 17, 1987, and the Maine Department of Environmental Protection ("DEP") ordered Plaintiff to clean up the soil contamination. In 1991, on the advice of a hired consultant, Defendant initially reimbursed costs incurred for the clean-up under the 1986 CGL policy. However, in 1998, on the advice of a different consultant, Defendant determined that it should have originally accepted and acknowledged coverage under the 1987 CGL policy rather than the 1986 CGL policy. Defendant then applied all of the payments it had previously made to the 1987 CGL policy, leaving approximately $132,000 in primary coverage under the 1987 CGL policy. Pursuant to this reclassification of the 1991

4

payments, Defendant has made no payments under either the 1986 policies or the 1987 Umbrella policy.

During the time that Plaintiff's claim has been pending, Defendant has sent Plaintiff various pieces of correspondence regarding its payment and treatment of Plaintiff's claims. The correspondence includes the March 3, 1988 letter (Ex. B to Ware Aff. (Ex. 1 to Docket # 17)) ("March 1998 Letter"), the October 3, 1991 letter (Ex. D to Ware Aff. (Ex. 1 to Docket # 17)) ("October 1991 Letter"), the June 21, 2000 letter (Ex. F to Ware Aff. (Ex. 1 to Docket # 17)) ("June 2000 Letter"), and the July 11, 2000 letter (Ex. G to Ware Aff. (Ex. 1 to Docket # 17)) ("July 2000 Letter") (together, "Defendant's Claims Correspondence"). All of these letters appear to include a reservation of rights. The March 1998, October 1991, and July 2000 Letters each contain a reservation of right, and the June 2000 Letter incorporates by reference an earlier reservation of right.

### III. DISCUSSION

Plaintiff argues in its "Motion for Summary Judgment and Incorporated Memorandum of Law" (Docket # 16) that it is entitled to summary judgment against Defendant in the amount of $536,000. It contends that the Primary and Umbrella policies from both 1986 and 1987 apply to the property damage at B&L Variety Store. Plaintiff argues first that if the damage resulted from a single occurrence, then that damage occurred in 1986 and would trigger the 1986 Primary and Umbrella policies. Plaintiff further contends that Defendant has waived its right to deny coverage under the 1986 policies. Plaintiff also argues in the alternative that if the leak was a single occurrence which triggered the 1987 policies, then Defendant is precluded as a matter of waiver and estoppel from asserting the Total Pollution Exclusion in the 1987 policies.

The question of which policies apply to the damage at B&L Variety Store cannot be

answered at the summary judgment stage. First and foremost, there is a clear dispute of material fact as to when the leak occurred or began to occur, and whether it was a single incident or an ongoing affair.

On the issue of estoppel, Defendant is not estopped from denying coverage by its actions, either because it made an initial payment under the 1986 CGL policy or because it later assigned that payment to the 1987 CGL policy.[1]  According to Maine law,

> [t]o assert equitable estoppel in an insurance contract, an insured must prove two elements: (1) unreasonable conduct by the insurer which misleads the insured concerning the scope of coverage; and (2) justifiable reliance by the insured upon the conduct of the insurer.

County Forest Prods., Inc. v. Green Mountain Agency, Inc., 758 A.2d 59, 66 (Me. 2000). See also Tarason v. Town of S. Berwick, 868 A.2d 230, 234 (Me. 2005). On the present record, Plaintiff is not entitled to summary judgment on its estoppel theory. At best, there are trialworthy issues as to whether Defendant was unreasonable or misleading in either its denial of coverage or its unilateral assignment of the Plaintiff's claim to the 1987 CGL policy. Moreover, absent a clear showing that Plaintiff neglected to obtain other available insurance, or otherwise acted or failed to take action in reliance on Defendant, Plaintiff cannot demonstrate detrimental reliance at the summary judgment stage. Connelly v. Home Life Ins. Co., 432 A.2d 1235, 1236 (Me. 1981).

The record similarly does not support a finding that Plaintiff is entitled to summary judgment based on Defendant's alleged waiver of its right to deny coverage under the 1986 or 1987 policies. Waiver under Maine law "is a voluntary relinquishment of some known right, benefit or advantage that the party would have enjoyed were it not for the waiver." Northeast

---

[1] The Court notes that its analysis is substantially similar to that found in the Magistrate Judge's Recommended Decision (Docket # 36). This Recommended Decision was vacated by the Court after a series of filing errors. See Order on Motions (Docket # 44). However, to the extent that the new filings have not change the applicable law that was aptly summarized in the Recommended Decision, the Court repeats those statements of applicable law here.

Ins. Co. v. Concord Gen. Mut. Ins. Co., 461 A.2d 1056, 1059 (Me. 1983).  Plaintiff claims that Defendant made payments under both the 1986 and 1987 policies, and has therefore waived its right to deny coverage under those claims.  However, Defendants' Claim Correspondence explicitly stated that various payments under the policies were made pursuant to a reservation of rights.  Thus, viewing the record in the light most favorable to Defendant, a reasonable factfinder could conclude that Defendant did not waive its rights by making payments under the policies. On this basis, the Court must deny Plaintiff's request for summary judgment based on waiver.

## IV.  CONCLUSION

For the reasons explained above, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (Docket # 16).

       SO ORDERED.

                                          /s/ George Z. Singal
                                          Chief U.S. District Judge

Dated this 24th day of February 2006.